# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6787 | **DATE** | 7/28/2004 |
| **CASE TITLE** | Fidelity & Deposit Company vs. Marian Professional Const., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the foregoing reasons, F&D's motion for partial summary judgment [31-1] and defendant Wilma Del Nagro's motion for summary judgment [34-1] are both granted.   Because this does not dispose of all claims as to all parties, this is not a final judgment.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | number of notices | | **Document Number** |
| ✓ | Notices mailed by judge's staff. | JUL 29 2004 | | |
| | Notified counsel by telephone. | date docketed | | 45 |
| | Docketing to mail notices. | 6 | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 7/28/2004 | | |
| | | date mailed notice | | |
| KM | courtroom deputy's initials | KM | mailing deputy initials | |

U.S. DISTRICT COURT

2004 JUL 28 PM 6:50

Date/time received in central Clerk's Office

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FIDELITY & DEPOSIT COMPANY OF      )
MARYLAND,                          )
                                   )
          Plaintiff,               )
                                   )
     v.                            )
                                   )          No. 99 C 6787
MARIAN PROFESSIONAL CONSTRUCTION,  )
INC., PROFESSIONAL COATING, INC.,  )
MARIAN NOWACKI, HELENA NOWACKI,    )
MICHAEL DEL NAGRO, WILMA DEL       )
NAGRO, NAVNIT BAROT and GEETA      )
BAROT,                             )
                                   )
          Defendants.              )

DOCKETED

JUL 2 9 2004

### MEMORANDUM OPINION

Before the court are plaintiff's motion for partial summary judgment, and defendant Wilma Del Nagro's motion for summary judgment. For the reasons stated below, both motions are granted.

### BACKGROUND[1]

Plaintiff Fidelity & Deposit Company of Maryland ("F&D"), a Maryland corporation, is in the business of issuing surety bonds, including bid, payment and performance bonds for construction projects. Defendant Marian Professional Construction, Inc. ("MPC") was, at all relevant times, an Illinois general contractor. In 1997 and 1998, F&D issued a number of bonds on behalf of MPC for

---

[1]The following statement of facts represent those facts that have been properly presented to the court through the parties' Local Rule 56.1 statements, and are undisputed unless otherwise noted.



various public works projects.  Under these bonds, MPC was the
principal, F&D was the surety, and the various public entities
funding the construction work were the obligees.  In consideration
of the issuance of the bonds, defendants MPC, Professional Coating,
Inc. ("PCI"), Marian Nowacki, Helena Nowacki, Michael Del Nagro,
Navnit Barot and Geeta Barot, on or around June 12, 1995, entered
into a General Indemnity Agreement ("the Indemnity Agreement" or
"the Agreement") whereby these defendants agreed to indemnify F&D
for any liability it incurred as a result of issuing the bonds.[2]
The Agreement provides, in relevant part:

> The Contractor and Indemnitors shall
> exonerate, indemnify, and keep indemnified
> the Surety from and against any and all
> liability for losses and/or expenses of
> whatsoever kind or nature(including, but
> not limited to, interests, court costs
> and counsel fees) and from and against
> any and all such losses and/or expenses
> which the Surety may sustain and incur:
> (1) By reason of having executed or
> procured the execution of the Bonds, (2)
> By reason of the failure of the Contractor
> of Indemnitors to perform or comply with
> the covenants and conditions of this
> Agreement, or (3) In enforcing any of the
> covenants and conditions of this Agreement.
> Payment by reason of the aforesaid causes
> shall be made to the Surety by the
> Contractor and Indemnitors as soon as
> liability exists or is asserted against
> the Surety, whether or not the Surety

---

[2]PCI was another Illinois general contractor.  Marian Nowacki was
an officer of both MPC and PCI.  The record is not clear as to the
other defendants' relationships with MPC and/or PCI, but it is
undisputed that all defendants, with the exception of Wilma Del Nagro
(more on that below), executed the Indemnity Agreement.

shall have made any payment therefor.
Such payment shall be equal to the
amount of the reserve set by the Surety.
In the event of any payment by the Surety
the Contractor and Indemnitors further
agree that in any accounting between the
Surety and Contractor, or between the
Surety and the Indemnitors, or either or
both of them, the Surety shall be
entitled to charge for any and all
disbursements made by it in good faith in
and about the matters herein contemplated
by this Agreement under the belief that
it is or was liable for the sums and
amounts so disbursed, or that it was
necessary or expedient to make such
disbursements, whether or not such
liability, necessity or expediency
existed; and that the vouchers or other
evidence of any such payments made by the
Surety shall be prima facie evidence of
the fact and amount of the liability to
the Surety.

The Agreement also provides:

In the event of any breach or default
asserted by the obligee in any said Bonds,
or the Contractor has abandoned the work
on or forfeited any contract or contracts
covered by any said Bonds, or has failed
to pay obligations incurred in connection
therewith . . . the Surety shall have the
right . . . to take possession of any part
or all of the work under any contract or
contracts covered by any said Bonds, and
at the expense of the Contractor and
Indemnitors to complete or arrange for the
completion of the same, and the Contractor
and Indemnitors shall promptly upon demand
pay to the Surety all losses, and expenses
so incurred.

The first bond at issue, a bid bond, was provided by F&D in

April 1998 to secure a bid submitted by MPC to the Village of

Lindenhurst, an Illinois municipality, for the construction of a

new police facility. The Village's bidding instructions required that bids include a bond equaling 5% of the bid. The bond was forfeitable if, *inter alia*, the successful bidder failed to sign the contract. MPC submitted a bid in the amount of $1,785,000, and the required bond in the amount of $89,250 (5% of the bid). In June 1998, the Village notified MPC that it had accepted its bid and made a demand upon MPC to execute the contract. However, the following month, MPC withdrew its bid and failed to sign the contract. The Village then made a claim against F&D as surety for the bond's full amount. After investigating the claim, F&D paid the Village the full amount of the bond, $89,250.[3] In the course of its investigation, F&D paid $636.00 in consulting fees.

Next, in May 1997, F&D issued a performance and payment bond on a contract between the City of Naperville, another Illinois municipality, and MPC for construction and renovation work on a municipal office building. In July 1998, the City notified F&D, pursuant to the terms of the performance bond, that MPC was in default on the contract. Ultimately, the City withdrew its declaration of default and allowed MPC to continue its work on the contract, but not before F&D paid $4,336.35 to a consultant to investigate the default claim.

---

[3]Defendants contend that F&D failed to conduct an adequate investigation prior to paying the Lindenhurst bond. However, defendants offer no evidence to support this assertion, so it is disregarded. See Fed.R.Civ.P. 56(e); N.D. Ill. Local Rule 56.1.

Lastly, in September 1998, F&D issued another performance and payment bond, this one on a contract between the United States Department of Veterans Affairs ("the VA") and MPC for the construction of an "ambulatory procedure suite" at the Veterans Administration Hospital in Hines, Illinois. MPC began construction, but in August 2001, it abandoned the project. By notice dated October 19, 2001, the VA declared MPC in default. Subsequently, the VA made demand upon F&D, as surety on the performance bond, to complete the work under the contract. F&D retained consultants and attorneys to assist it in investigating the VA's demand and ultimately in executing a takeover agreement executed between the VA and F&D. Pursuant to the terms of the performance bond and the takeover agreement, F&D entered into a completion contract with another general contractor which then completed the project. F&D incurred losses totaling $411,983.72 for completion of the contract.

In addition to the losses sustained on the performance bond, F&D also received claims from MPC's labor and material suppliers seeking to recover under the VA project payment bond. Following an investigation of these claims, F&D made payments totaling $405,623.55 to various labor and material suppliers. Through the course of investigating the claims under both the performance and payment bonds, and in executing a completion contract to finish the project, F&D paid $123,587.99 in consulting fees. Taken together,

F&D incurred losses totaling $1,112,662.13, as a result of issuing the Lindenhurst, Naperville and VA Hospital surety bonds.[4]

F&D filed the present action to recover those losses. The complaint alleges three counts under the Indemnity Agreement: contractual indemnity against all defendants (Count I), common law reimbursement against MPC (Count II), and a claim seeking an injunction that would require all defendants to provide access to their books and records (Count III). F&D has moved for summary judgment against defendant MPC on, it appears, only Counts I and II, and against defendants PCI, Marian Nowacki, and Helena Nowacki on only Count I. Wilma Del Nagro has moved for summary judgment on the only counts pled against her, Counts I and III.

## DISCUSSION

**A.** **Legal Standards**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of establishing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Should

---

[4]This figure includes $74,091.51 in attorneys' fees incurred by F&D in connection with investigating the claims against the bonds and in bringing the present action.

the moving party meet this burden, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); <u>Logan v. Commercial Union Ins. Co.</u>, 96 F.3d 971, 978 (7th Cir. 1996). A genuine triable issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether there are "genuine issues of material fact," the court considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor. <u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002).

In addition, Local Rule 56.1 requires parties to comply with detailed procedures in filing and responding to summary judgment motions. The moving party must supplement its motion papers and memorandum of law with a statement of material facts consisting of "short numbered paragraphs" pointing to record evidence supporting the motion. L.R. 56.1(a). A party opposing the motion must provide, in addition to its memorandum of law, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(A). In addition, the non-movant is required to file a separate statement of any additional facts that

support a denial of summary judgment. L.R. 56.1(b)(3)(B).
Finally, and significantly, "[a]ll material facts set forth in the
statement required of the moving party will be deemed to be
admitted unless controverted by the statement of the opposing
party." L.R. 56.1(b)(3)(B).

**B.      Analysis**

This action is a straightforward indemnity claim. And,
under Illinois law, an indemnity agreement is treated like any
other contract.[5]  See Hanover Ins. Co. v. Smith, 182 Ill.App.3d
793, 796, 538 N.E.2d 710 (1989). The cardinal rule is to give
effect to the intention of the parties. Id. The intent of the
parties is discerned from the language in the contract, which is
given its plain and ordinary meaning unless it is ambiguous. See
United States Fidelity & Guaranty Co. v. Klein Corp., 190
Ill.App.3d 250, 254, 558 N.E.2d 1047 (1989). Absent any ambiguity,
"a surety is entitled to stand on the language of the contract."
Id.

The court is presented with two motions for summary
judgment. We first take up the motion of Wilma Del Nagro. The

---

[5]In diversity cases, we generally turn to the choice of law rules
of the forum state to determine which state's substantive law applies.
See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct.
1020, 85 L.Ed. 1477 (1941). But when, as here, the parties fail to
even consider the choice of law issue (all parties simply cite
Illinois law), the substantive law of the forum state is presumed to
govern. See Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, 136
F.3d 1116, 1120 (7th Cir. 1998); Wood v. Mid-Valley Inc., 924 F.2d
425, 426-27 (7th Cir. 1991); Kritikos v. Palmer Johnson, Inc., 821
F.2d 418, 421 (7th Cir. 1987). Accordingly, we apply Illinois law.

complaint alleges that she, along with each of the other defendants, signed the Indemnification Agreement and is therefore liable to F&D for its losses sustained in connection with the issuance of the Lindenhurst, Naperville and VA Hospital bonds. By her motion, and her properly submitted Rule 56.1 statement, Ms. Del Nagro flatly denies signing the Agreement. She cites the report of *F&D's* handwriting expert, which concludes that "Wilma Del Nagro . . . <u>did not</u> genuinely sign her name on the . . . signature pages of the Agreements of Indemnity dated June 12, 1995." (<u>See W. Del Nagro 56.1 Stat.</u>, <u>Ex. 2</u>, "Expert Report," p. 8.) She also submits her own sworn affidavit which states that she never signed the agreement or authorized anyone else to sign it on her behalf, and further, that she had no knowledge of the agreement until 2002, and only then by virtue of this lawsuit. (<u>See</u> <u>id.</u>, <u>Ex. 1</u>, "W. Del Nagro Affid.," ¶¶ 3,4,7,9.)

Ms. Del Nagro's motion is uncontested. Therefore, all material facts proffered by Ms. Del Nagro are taken as true. <u>See Johnson v. Gudmundsson</u>, 35 F.3d 1104, 1108 (7th Cir. 1994); L.R. 56.1(b)(3)(B). While this does not *automatically* result in the granting of summary judgment - the facts, though uncontroverted, are still viewed in the light most favorable to the non-movant, <u>see Smith v. Severn</u>, 129 F.3d 419, 426 (7th Cir. 1997) - that is the outcome here. To enforce a contract on the basis of a signature (as opposed to some other manifestation of assent), it is axiomatic

that the contract must be signed by the party against whom the contract is sought to be enforced. See Glabman v. Bouhall, 81 Ill.App.3d 966, 969, 401 N.E.2d 990 (1st Dist. 1980). It is undisputed that Ms. Del Nagro did not sign the Indemnification Agreement, and indeed that she had no knowledge of its existence prior to this suit. On this record, Ms. Del Nagro cannot be liable under the contract as a matter of law, and therefore she is entitled to summary judgment.

This brings us to F&D's motion for summary judgment against defendants MPC, PCI, Marian Nowacki, and Helena Nowacki.[6] Along with its motion and memorandum of law, F&D has filed a 56.1 statement consisting of 48 paragraphs of material fact, largely those set out above in the background section. F&D's factual assertions rely almost exclusively on the attached sworn affidavit of its claims attorney, Gregory Kilburn, who was charged with handling the various claims asserted against the bonds F&D issued on behalf of MPC. Attached to the Kilburn affidavit are computer print-outs of F&D's "Claim Summary Information" and "Payment/Recovery History" screens, made in the ordinary course of its business, and detailing the date of payment, the amount of payment, and the named payee for each of the losses and expenses allegedly incurred by F&D as a result of issuing the bonds.

---

[6]Hereafter, "defendants" refers only to MPC, PCI, Marian Nowacki and Helena Nowacki.

Against this, defendants' response is narrow. They raise no issue as to the fact of their liability under the Indemnity Agreement. Unlike Ms. Del Nagro, none of the defendants deny executing the Agreement. Nor is there any claim that the Agreement's language is somehow ambiguous. The sole issue raised by defendants relates instead to damages. On that front, and further narrowing the dispute, defendants do not take issue with F&D's assertion that it has in fact incurred damages in the amount of $1,112,662.13. Rather, defendants claim that some of those damages were incurred in bad faith. First, on the Lindenhurst bid bond, defendants allege that MPC withdrew its bid because the Village "failed to include specs and plans for the roof" of the police facility. Defendants then argue that F&D paid on the bid bond "without good faith or investigation as to defective plans [and] specs for premises." Second, on the VA Hospital performance bond, defendants again proffer their reasons for default – "[t]he Hospital failed to pay MPC money per contract" – and allege that F&D's losses for the completion of the contract, in the amount of $411,983.72, are "excessive per industry standards."[7] Construed generously, we glean three arguments from defendants' response: (i) F&D acted in bad faith on both the Lindenhurst and VA Hospital bonds by paying on claims for which MPC was not liable, (ii) F&D

_____

[7]Defendants do not challenge the damages sought as a result of F&D's issuance of the Naperville bond.

acted in bad faith on the Lindenhurst bond by paying the claim
without conducting an adequate investigation into the circumstances
of MPC's alleged default, and (iii) F&D acted in bad faith on the
VA Hospital bond by overpaying on the completion contract pursuant
to the performance bond.

Defendants' response fails to raise a genuine issue of
material fact because none of their arguments are supported by
competent record evidence.[8] *All* of defendants' allegations of bad
faith rely solely on a three-paragraph "affidavit" of Marian
Nowacki. First of all, the affidavit was neither sworn nor made

---

[8]We also note that at least one of defendants' arguments fails as
a pure matter of law. While the arguments regarding F&D's duties to
investigate and to mitigate damages *might* have some legal footing, the
argument that F&D acted in bad faith by allegedly paying on claims for
which MPC was not liable is untenable. Again, briefly, the Indemnity
Agreement provides: "[T]he Surety shall be entitled to charge for any
and all disbursements made by it in good faith in and about the
matters herein contemplated by this Agreement under the belief that it
is or was liable for the sums and amounts so disbursed, or that it was
necessary or expedient to make such disbursements, whether or not such
liability, necessity or expediency existed." Illinois courts have
held that such language vests the surety with discretion to make
payments and demand indemnity if it "believed in good faith that it
*might be* liable for the payments" see Klein Corp., 190 Ill.App.3d at
255; Lamp, Inc. v. Intern. Fidelity Ins. Co., 142 Ill.App.3d 692, 695,
493 N.E.2d 146 (2d Dist. 1986), and such discretion is "limited only
by a showing of fraud or bad faith." Klein Corp., 190 Ill.App.3d at
255. Taking it a step further, under such indemnity agreements,
"absent an affirmative showing of fraud or bad faith, the good faith
of the plaintiff-surety [is] presumed." Mountbatten Surety Co., Inc.
v. Szabo Contracting, Inc., No. 2-03-0171, 2004 WL 1380189, at *12
(Ill.App.2d Dist. June 17, 2004) Mountbatten Surety Co., 2004 WL
1380189, at *12. Therefore, even if F&D *did* pay off debts for which
MPC was not liable, the Agreement entitles F&D to full reimbursement,
that is, absent an affirmative showing of bad faith. And of course,
conduct expressly allowed by the contract cannot *itself* support that
bad faith showing.

under penalty of perjury.  Therefore, it does not comport with the requirements of Federal Rule of Civil Procedure 56(e) and "we can simply ignore [it]."  See Gilty v. Village of Oak Park, 919 F.2d 1247, 1255 n. 13 (7th Cir. 1990).  Second, assuming we did consider the affidavit (and, as a matter of fact, we have), it is of no evidentiary value.  The affidavit simply states that "I have read the motion for summary judgment and have full knowledge of the facts contained [therein] and said statements and facts are true and correct."  But even if we incorporate by reference the allegations regarding bad faith into the affidavit, that gets defendants no further.

There is nothing wrong with rebutting a summary judgment motion with a party's own affidavit.  See Fed.R.Civ.P. 56(c); Payne v. Pauley, 337 F.3d 767, 771 (7th Cir. 2003) ("We have routinely found that a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion.").  That affidavit, however, must "set forth *specific facts* showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e) (emphasis added); see also Equal Employment Opportunity Comm'n v. Roebuck & Co., 233 F.3d 432, 437 (7th Cir. 2000) (A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion.").  "Conclusory allegations, unsupported by specific facts, will not suffice."  Payne, 337 F.3d at 773 (citing Lujan v. Nat'l Wildlife Fed'n, 497

U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). And here, conclusory allegations, not "specific facts," is all the defendants have presented to the court. There is simply no evidence to support defendants' allegation that F&D paid on claims for which MPC was not liable, or that F&D failed to adequately investigate prior to making a payment, or that F&D overpaid on a claim. That one of the parties says so does not make it so, and certainly does not by itself constitute competent evidence to create a genuine triable issue.

Because the remainder of the record is undisputed, both on defendants' liability and the amount of damages incurred, F&D is entitled to judgment as a matter of law against defendant MPC on Counts I and II, and against defendants PCI, Marian Nowacki and Helena Nowacki on Count I. Accordingly, these four defendants are jointly and severably liable to F&D in the amount of $1,112,662.13.

### CONCLUSION

For the foregoing reasons, F&D's motion for partial summary judgment and defendant Wilma Del Nagro's motion for summary judgment are both granted. Because this does not dispose of all claims as to all parties, this is not a final judgment.


DATE:   July 28, 2004

ENTER:  _____

        John F. Grady, United States District Judge